## Appeal of ANDERSON & GUSTAFSON.

Docket No. 1556.   Submitted October 26, 1925.   Decided January 30, 1926.

> A partnership which purchases an undivided one-half interest in an invention and writes it off as a loss during the year 1917, but which subsequently sells its interest in the invention, is not entitled, under the circumstances herein stated, to deduct from the gross income reported in its income-tax return for 1917 the amount of the investment in the invention.

*Fayette B. Dow* and *Willis Crane, Esqs.*, for the taxpayer.
*B. G. Simpich, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This appeal is from the determination of a deficiency in profits tax for the year 1917 in the amount of $16,260.31.

### FINDINGS OF FACT.

In 1917, John A. Anderson and C. A. Gustafson were members of a copartnership with principal office at Chicago, Ill. In March, 1916, Ivan Engstrom solicited the taxpayers' financial assistance in developing, patenting, and preparing for market a check-writer and adding machine. Engstrom estimated that the expense would be about $2,500 or $3,500 and that the machine could be prepared for market in from four to six months. The taxpayer entered into an arrangement whereby it purchased tools, dies, and other materials necessary to make a working model and draw plans, paid attorneys' fees for applications for patents, and, in addition, advanced Engstrom $30 weekly for his living expenses while the work was in its experimental stages. In the early part of 1917, the two members of the taxpayer partnership had advanced the total amount which Engstrom estimated would be necessary, but on further conference

with Engstrom were advised that, on account of the peculiar conditions existing in the labor market, his first estimate would have to be raised considerably, and, due to inability to have tools and dies made promptly a working model of the machine could not be completed before another three or four months had expired. After the advances made by the taxpayers had grown to several times the amount originally estimated, Anderson and Gustafson made a thorough investigation of the device which Engstrom was working upon. They consulted with some of the manufacturers of check protector devices, and a, representative of one of the most successful concerns, after an examination of the device, stated to the taxpayers that "he would not give five cents for the device." As a result of their investigations, Anderson and Gustafson reached the conclusion that the practicability of marketing the machine was very doubtful. Accordingly, they advised Engstrom that they would discontinue their arrangement. On September 30, 1917, they ceased advancing money for the enterprise and thereafter endeavored to dispose of their interest in the device, but without success. At the end of the calendar year 1917, they charged off the amounts advanced as a total loss.

Engstrom was still confident that he had a machine of merit and immediately tried to interest new capital. On May 12, 1918, he came to the taxpayers with four or five individuals, whom he said he had succeeded in interesting in his machine provided they could get the taxpayers' one-half interest on notes. They would not pay the taxpayers anything in cash but agreed to furnish cash to Engstrom to complete another model. The taxpayers then sold their one-half interest in the patent application for $10,000 in notes, running from four months to a year (which notes were subsequently paid), and a royalty of 25 cents on each machine which might thereafter be manufactured and sold. The purchasers financed Engstrom to the extent of building 54 machines which were put in banks and other establishments on trial. None were ever sold and the taxpayers never received any royalties thereon.

In 1917, the taxpayer partnership contributed $100 to the American Red Cross and claimed the amount paid as a deduction from gross income in the excess profits tax return filed. The deduction of this amount and of the claimed loss of $15,955 upon advances to Engstrom were disallowed by the Commissioner.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

## OPINION.

SMITH: The taxpayers claim the right to deduct from gross income, in a partnership tax return filed for the year 1917, $15,955, representing the cost to the partnership of a one-half interest in an invention and patent application made by one Engstrom; also the right to a deduction of $100 contributed to the American Red Cross.

In their petition the taxpayers do not specify the provision of the statute which entitles them to claim a deduction of a loss of $15,955. It was not contended at the hearing that it was an ordinary and necessary expense, but it was contended that the amount which had been spent was upon an invention which the taxpayers determined was worthless at the close of 1917. No contention was made that Engstrom was in any way obligated to pay them back the amount expended by them, either in advances to himself for labor performed or for the cost of constructing the check writer and adding machine. The Board finds no basis for the allowance of the amount as a debt ascertained to have been worthless and charged off within the year. The losses which a partnership may deduct from gross income are those " * * * actually sustained during the year, incurred in his business or trade, * * * when such losses are not compensated for by insurance or otherwise." Section 5 (a), Revenue Act of 1916. We think that the evidence in this case does not show that the taxpayers actually sustained a loss during the year 1917 in respect of the investment made in Engstrom's invention. Engstrom succeeded in May, 1918, and eventually the taxpayers realized $10,000 cash from their interest in the invention. Whatever loss was sustained from the investment was in the year 1918 and not in 1917.

In the income-tax return for the year 1917 the taxpayer claimed the deduction of $100 as a contribution to the American Red Cross, which deduction was disallowed by the Commissioner. The partnership return was made under the provisions of the Revenue Act of 1917. In section 206 of that Act, Congress has specifically allowed to a partnership, in computing its net income for excess-profits tax purposes, the same deductions to which an individual is entitled in computing his net income for income tax purposes under the Revenue Act of 1916, as amended by the Revenue Act of 1917. Under the Revenue Act of 1916, as amended, an individual is entitled to deduct, in computing his net income, contributions or gifts actually made within the year to corporations or associations organized and operated exclusively for charitable purposes. The American Red Cross is such an organization. Therefore, the taxpayer was entitled to deduct from gross income for the year 1917 the $100 in question.